## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LYNNETTE OSEI-ASIBEY and SHAWON
ROBINSON, *individually and on behalf of all
others similarly situated*,

    Plaintiffs,

v.

SMARTRENT, INC. and SMARTRENT
TECHNOLOGIES, INC.,

    Defendants.

Civil Action No.
1:23-cv-01590-SDG

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' motion for conditional

certification and court-facilitated notice [ECF 46]. For the following reasons, the

motion is **GRANTED** as to conditional certification and **DENIED without**

**prejudice** as to the requested court-facilitated notice.

## I.    Factual Allegations[1]

Named Plaintiffs Lynnette Osei-Asibey and Shawon Robinson (collectively,

Plaintiffs) worked for Defendants SmartRent, Inc. and SmartRent Technologies,

Inc. (collectively, SmartRent) as Field Installation Managers (FIM).[2] Osei-Asibey

was a FIM from February to September 2021, and thereafter was a Senior FIM until

---

[1]    This section is based on allegations in the complaint, answer, and declarations
supplied by the parties in connection with the motion for certification.
SmartRent remains free to contest these allegations at the decertification and
summary judgment stages of this case.

[2]    ECF 1, ¶ 21; ECF 46-3, ¶ 4.

June 2023.[3] Osei-Asibey performed the same work as a Senior FIM as she had when she was a FIM, but for a higher salary.[4] Robinson was a FIM from June 2019 to February 2022.[5] Plaintiffs regularly worked more than 40 hours per week.[6]

Plaintiffs allege that their primary job duty as FIMs was the manual installation of SmartRent's smart home hardware products.[7] Plaintiffs contend that they did not exercise discretion or independent judgment concerning matters of significance; regularly supervise other employees; or have hiring and firing authority.[8] SmartRent paid FIMs on a salary basis and classified them as exempt under the Fair Labor Standards Act (FLSA).[9] Plaintiffs, however, claim that they should have been classified as non-exempt employees entitled to overtime pay.[10]

Accordingly, Plaintiffs filed suit, alleging that SmartRent violated the FLSA by failing to pay them one-and-one-half times their hourly rates for all hours worked in excess of 40 hours per week.[11] Plaintiffs also seek to represent a

---

[3]   ECF 1, ¶ 21; ECF 46-3, ¶ 4.

[4]   ECF 60-3, at 6 (Osei-Asibey Dep. at 18:16–19:22).

[5]   ECF 1, ¶ 22; ECF 46-4, ¶ 4.

[6]   ECF 1, ¶ 27; ECF 46-3, ¶ 11; ECF 46-4, ¶ 11.

[7]   ECF 1, ¶ 24; ECF 46-3, ¶ 6; ECF 46-4, ¶ 6.

[8]   ECF 1, ¶¶ 25–26; ECF 46-3, ¶¶ 9–10; ECF 46-4, ¶¶ 9–10.

[9]   ECF 1, ¶ 23; ECF 7, ¶ 23.

[10]  ECF 1, ¶¶ 24, 28.

[11]  *Id.* ¶ 29.

2

collective of similarly situated SmartRent employees who worked as FIMs and were not paid overtime to which they were allegedly entitled. Specifically, the proposed collective would include

> • [a]ll persons who were or are employed by SmartRent as Field Installation Managers, Senior Field Installation Managers, or others performing material[ly] similar work, at any time within three (3) years prior to the filing of this Complaint and who were classified as exempt employees and were not paid the overtime premium of one-and-a-half (1½) times their hourly rates for all hours worked in excess of 40 hours per workweek.[12]

Plaintiffs now move the Court to conditionally certify this proposed collective and to permit notice of this litigation to be sent to the prospective collective members.[13]

## II.    Applicable legal standard

Under the FLSA, employees who are similarly situated can pursue collective actions against their employer. 29 U.S.C. § 216(b). Such employees must affirmatively opt into the suit. "That is, once a plaintiff files a complaint against an employer, any other similarly situated employees who want to join must affirmatively consent to be a party and file written consent with the court." *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (citing *Albritton v. Cagle's, Inc.*, 508 F.3d. 1012, 1017 (11th Cir. 2007)). Because of this opt-in

---

12    *Id.* ¶¶ 30–31.

13    ECF 46.

mechanism, "[t]he benefits of a collective action 'depend on employees receiving accurate and timely notice . . . so that they can make informed decisions about whether to participate.'" *Id.* at 1259 (quoting *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Certification at the initial stages of the case allows the parties or the Court to facilitate issuance of such notice. *Id.*

The Eleventh Circuit has approved of, but does not require, "a two-tiered approach" to certification under § 216. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). First, during the early stages of litigation, the court evaluates whether the employees are similarly situated under a lenient standard and decides whether to preliminarily certify the collective and allow notice. *Id.* at 1217–18. At the second stage, the Court reevaluates the similarly situated question once discovery has produced more information about the plaintiffs' claims. *Hipp*, 252 F.3d at 1218; *see also Morgan*, 551 F.3d at 1260–61.

The court's analysis during the first stage is "not particularly stringent" and is "flexible." *Morgan*, 551 F.3d at 1261; *Hipp*, 252 F.3d at 1218. The plaintiffs may satisfy their burden through detailed allegations supported by declarations that successfully engage the defendant's declarations to the contrary. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (cleaned up); *see also Morgan*, 551 F.3d at 1261 n.39. The court may grant conditional certification if a plaintiff demonstrates a reasonable basis to believe that: (1) there are other employees of the employer

4

who desire to opt-in; and (2) that these other employees are "'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Stitt v. Am. Disposal Servs. of Ga., Inc.*, No. 1:18-CV-2516-TWT, 2018 WL 6716046, at *1 (N.D. Ga. Dec. 20, 2018) (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991)).

### A.    The Court declines SmartRent's invitation to disregard the two-tiered approach in this case.

### 1.    The heightened standard employed by some courts

SmartRent argues that the Court should apply a heightened standard to Plaintiffs' request for conditional certification, arguing that there is a "strong trend" moving away from the two-tiered approach.[14] While that may be true elsewhere, the Eleventh Circuit Court of Appeals—in a case decided less than a year ago—indicated that the two-step approach it approved of in *Hipp*, *Anderson*, and *Morgan* continues to be viable. *Wright v. Waste Pro USA, Inc.*, 69 F.4th 1332, 1339 (11th Cir. 2023) ("We have recommended that district courts use a two-step approach to determine whether a purported collective action meets the statutory requirements"). This Court declines to abandon that approach here. Although the two-tiered approach is not required, as our appellate court noted in urging district courts to adopt this approach in the first place, it is "an effective tool for district

---

[14]    ECF 59, at 13–15.

courts to use in managing these often complex cases." *Hipp*, 252 F.3d at 1219; *see also Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1277 n.6 (11th Cir. 2018) (noting the problems that can arise when a district court declines to follow this process).

### 2.    Discovery

SmartRent also argues that the Court should apply a more exacting standard to Plaintiffs' assertions that they are similarly situated to members of the putative collective because the parties have taken discovery.[15] But SmartRent's contention that Plaintiffs "had ample opportunity to conduct their own discovery and to submit additional evidence"[16] is misleading given the facts here.

SmartRent timely answered the complaint on May 11, 2023.[17] Therefore, under the Court's local rules, discovery began on June 12.[18] LR 26.2(A), NDGa. In their joint discovery plan, the parties indicated that Plaintiffs would file their certification motion by August 22, agreeing to conduct a little over two months of discovery in the interim.[19] Thereafter, the parties represented that their exchange of discovery included *limited* document productions (but not of electronically

---

[15]   *Id.* at 15–16.

[16]   *Id.* at 16.

[17]   ECF 7.

[18]   Because the 30th day fell on a weekend, the deadline for the start of discovery rolled over to the next business day—June 12, 2023. Fed. R. Civ. P. 6(a)(1)(C). It is unclear why the parties contend discovery began on June 20, 2023.

[19]   ECF 11, ¶ 7. Plaintiffs actually filed their motion on July 25, 2023. ECF 46.

stored information), written discovery requests, and the depositions of Plaintiffs.[20] Notably, however, the parties jointly "agreed to defer discovery as to any opt-in plaintiffs and the merits of Plaintiffs' claims until a ruling on Plaintiffs' Motion for Conditional Certification."[21] The parties thus agreed to defer taking discovery that could be used to show whether the opt-ins are truly similarly situated to Plaintiffs. Moreover, the parties requested, and the Court agreed to, a stay of discovery pending its ruling on certification.[22] Having specifically agreed to limit the scope of discovery, SmartRent's argument that certification is improper because Plaintiffs have not presented sufficient evidence of their similarity to the putative opt-ins is misplaced.

Further, the cases on which SmartRent relies to suggest that the Court should apply a more exacting standard when a plaintiff has *any* opportunity to take discovery are not helpful to its position.[23] In *Shaw v. Bank of America, N.A.*, the parties conducted discovery specifically directed to the issue of conditional certification and whether Shaw was similarly situated to the proposed collective. Despite that discovery, Shaw still failed to present evidence that he was similarly

---

[20]  ECF 58, ¶ 5.

[21]  *Id.* ¶ 5; *see also* ECF 46-1, at 3 n.1 (stating that SmartRent withdrew the written discovery it issued to four opt-ins).

[22]  Sept. 11, 2023 D.E.

[23]  ECF 59, at 15–16.

situated in terms of job duties and pay provisions. Case No. 1:08-cv-2819-WSD, 2009 WL 10665138 (N.D. Ga. Apr. 10, 2009). Similarly, in *Green v. Atlas Senior Living, LLC*, the parties specifically agreed to conduct the discovery needed to brief the conditional certification issue, including all depositions. Case No. CV421-237, 2022 WL 2007398, at *2 (S.D. Ga. June 6, 2022). The court applied more scrutiny to the plaintiff's claim of being similarly situated because she had been afforded "substantial discovery" directly related to the certification issue. *Id.* at *4.

Here, in contrast, the parties expressly agreed *not* to engage in discovery related to the opt-ins—that is, they agreed *not* to take discovery concerning the "similarly situated" requirement yet. Moreover, Plaintiffs have presented evidence that shows the similarity of the opt-ins' job duties and pay to Plaintiffs'.

In *Ide v. Neighborhood Restaurant Partners, LLC*, the parties had been given a ten-month period to conduct all discovery and the plaintiff filed her motion to certify after eight months. 32 F. Supp. 3d 1285, 1289, 1290–91 (N.D. Ga. 2014). While it declined to define the exact parameters of the heightened standard of review it was applying, the *Ide* court concluded that the plaintiff had to present more than just the allegations of the complaint and her own affidavit to justify the issuance of notice. *Id.* at 1291–92; *see also id.* at 1291 (emphasis added) (acknowledging that "the leniency standard articulated in *Hipp* exists so that conditional certification motions can be adjudicated before *significant* discovery has taken place")

(emphasis added). As discussed below, Plaintiffs here *have* presented more than just the complaint and their own declarations—despite not having yet had the benefit of discovery related to the opt-ins.[24]

The Court therefore finds it appropriate to apply the two-tiered approach approved of in *Hipp.* Before delving into that analysis, however, the Court addresses SmartRent's perjury allegations.

## III.   SmartRent has not shown that Plaintiffs lied under oath.

SmartRent insists that Plaintiffs perjured themselves about their primary duties as FIMs such that the Court should disregard *all* of the declarations supporting the certification motion (even those from opt-ins).[25] The Court, SmartRent demands, must reject "blatant falsehoods" and decline to conditionally certify the collective on this basis alone.[26] The Court takes such allegations seriously, and they should not be made lightly. Having carefully evaluated the record,[27] the Court finds that SmartRent has not proven at this juncture that Plaintiffs lied about or intentionally misrepresented any material fact.

---

[24]   *See infra* Section IV.B.1.

[25]   ECF 59, at 9; *see generally id.* at 9–13.

[26]   *Id.* at 9.

[27]   SmartRent supplied the Court with excerpts of Plaintiffs' depositions [ECF 59-5, ECF 59-6], but complete transcripts were provided by Plaintiffs [ECF 60-3, 60-4] and are the versions on which the Court relies.

### 1.  Plaintiffs' testimony

Both Plaintiffs attested in their declarations that

- [t]he primary duty of a FIM is to engage in the manual task of installing SmartRent smart home hardware products and similar manual work. FIMs do not work in an office environment, but travel to out-of-town jobsites each week to engage in and oversee the installation of SmartRent home hardware products at apartment complexes and other multi-family living communities located throughout the country.[28]

SmartRent claims that these statements are "demonstrably false" based on excerpts from Plaintiffs' depositions in which Osei-Asibey testified that she regularly conducted quality control of contractors' work and Robinson purportedly agreed that installation work was *not* his primary duty.[29]

But the excerpts on which SmartRent wants the Court to rely do not support these sweeping assertions. As a practical matter, that Osei-Asibey and Robinson regularly did things other than manual installations as part of their job does not undercut the assertions in their declarations that performing manual installations was their *primary* duty.[30] Nor does the testimony SmartRent cites support its conclusion that Robinson swore his primary duty was *not* installation work. In

---

[28]   ECF 46-3, ¶ 6 (Osei-Asibey) & ECF 46-4, ¶ 6 (Robinson).

[29]   ECF 59, at 10–11 (citing, *inter alia*, Robinson Dep. at 38:9–42:11).

[30]   *See generally* ECF 60, at 3–8 (Plaintiffs' point-by-point response to SmartRent's perjury allegations).

fact, it does not appear that SmartRent even asked Robinson during his deposition whether performing manual installations was a primary part of his job.[31] Having reviewed the full transcripts of Plaintiffs' depositions, what their testimony demonstrates is the inherent flexibility in the word "primary"[32] and the seemingly incontestable fact that the FIM position sometimes involved duties other than manual installations.

### 2.   SmartRent's records

Similarly, SmartRent's attempt to rely on thousands of pages of its internal records of installation projects misses the mark.[33] The company asserts that these documents demonstrate the falsity of Plaintiffs' attestations about their job responsibilities, the amount of time they spent working out-of-town, and the number of projects they handled without non-employee contractors.[34] Volume alone is not persuasive. Nor are the data on which SmartRent relies as compelling

---

[31] Rather, SmartRent asked whether *other* tasks were "a primary part" of the FIM's job duties. *See generally* ECF 60-4, at 11–12 (Robinson Dep. at 38:9–42:19).

[32] The term "primary duty" is defined by the regulations implementing the FLSA and is therefore a term of art in this context. 29 C.F.R. § 541.700. During Plaintiffs' depositions, SmartRent did not rely on that particularized definition and instead employed the term in a colloquial sense. *See, e.g.*, ECF 60-3, at 4 (Osei-Asibey Dep. 12:20 ("What were your primary job duties in that role [at AutoZone]?"); *id.* at 4–5 (Osei-Asibey Dep. at 12:18–21, 13:15–14:12)).

[33] ECF 59-2, at 18 to ECF 59-4, at 696.

[34] ECF 59, at 2–17 (Brennan Lowe Decl.).

as it claims. SmartRent's declarant confirms that over 70% of Osei-Asibey's projects and over 80% of Robinson's were out of town,[35] despite SmartRent's castigation of Plaintiffs' assertions that they travelled out of town "each week."[36] Osei-Asibey testified that she "often" worked on FIM-only installations (*i.e.*, installations without independent contractors);[37] according to SmartRent's data, over 25% of the projects she worked on were FIM-only.[38] And, despite SmartRent's supporting declaration and chart purporting to summarize the internal records,[39] Plaintiffs have not had a full opportunity to conduct discovery of their own on these matters in light of the parties' agreed-upon stay.

In short, SmartRent has succeeded only in demonstrating that there may be a dispute of material fact about FIMs' job responsibilities and the applicability of the administrative exemption. As frequently occurs in FLSA cases, the employer here may have a different view of the employees' job responsibilities than the employees do. That's unsurprising since those differing opinions are the basis for the dispute in the first place. But it doesn't necessarily make Plaintiffs liars.

---

[35]   ECF 59-2, at 8, ¶ 21; *id.* at 14, ¶ 39.

[36]   ECF 59, at 13 n.2.

[37]   ECF 60-3, at 14 (Osei-Asibey Dep. at 50:9–18).

[38]   ECF 59-2, at 9, ¶ 22.

[39]   ECF 59, at 2–17.

SmartRent's accusations of perjury are not supported by this record. Nor does it provide a justification for the Court to disregard any of the declarations supporting Plaintiffs' motion for conditional certification.

## IV. The Court will conditionally certify Plaintiffs' proposed collective.

Conditional certification is appropriate where the named plaintiffs are similarly situated to the putative collective they seek to represent and there are other employees who desire to opt into the case. *Morgan*, 551 F.3d at 1259–60 (citing *Dybach*, 942 F.2d at 1567). The plaintiffs bear the burden of showing a reasonable basis for their claim. *Grayson*, 79 F.3d at 1095–96.[40] The plaintiffs' jobs need not be identical to those of the putative collective, only similar. *Id.* at 1096. Working in different locations is not alone determinative. *Hipp*, 252 F.3d at 1219 (noting that the plaintiffs all had the same job title and alleged similar mistreatment despite working in different geographic locations).

### A. There are other FIMs who desire to opt-in.

In *Dybach v. Florida Department of Corrections*, the Eleventh Circuit held that a district court should "satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions" before

---

[40]   Although *Grayson* involved the Age Discrimination in Employment Act, that statute incorporates the FLSA's opt-in provision. *Grayson*, 79 F.3d at 1096.

permitting notice to be provided to those potential collective members. 942 F.2d at 1567–68. Here, Plaintiffs have averred that there are over 100 potential collective members.[41] Declarations from several of the opt-ins indicate that SmartRent employed somewhere between 60 and 75 FIMs as of June 2023.[42] Before completion of briefing on Plaintiffs' conditional certification motion, consents to join from 17 then-current or former FIMs had been filed.[43] Given the significant percentage of potential collective members who have already opted in, Plaintiffs have demonstrated that there is sufficient interest in this litigation. SmartRent does not argue otherwise.

### B.   Plaintiffs are similarly situated to the proposed collective.

Generally speaking, Plaintiffs seek to represent a collective of FIMs who were classified as exempt and thus not paid overtime when they worked more than 40 hours per week.[44] Plaintiffs assert that they are similarly situated to putative members of the collective because all the FIMs had the same job duties and spent the majority of their time doing manual installations and performing quality checks on those installations.[45] They were all subject to the same pay

---

41   ECF 46-3, ¶ 15; ECF 46-4, ¶ 15.

42   ECF 46-5, ¶ 15; ECF 46-7, ¶ 15.

43   ECFs 10, 22–25, 32, 34, 37, 39–40, 45, 48–50, 52.

44   ECF 1, ¶¶ 30–31.

45   ECF 46, at 11–12.

provisions and alleged misclassification that forms the basis of Plaintiffs' claim.[46]

For its part, SmartRent contends that (1) Plaintiffs are not similarly situated because their descriptions of their job duties vary from each other and from the opt-ins and (2) FIMs qualify for the administrative exemption.[47]

### 1. Similar, not identical

The Eleventh Circuit has made clear that the similarly situated requirement is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson*, 79 F.3d at 1095. That court has also repeatedly emphasized that identicalness is not required. *Id.* at 1096; *Morgan*, 551 F.3d at 1259–60; *Anderson*, 488 F.3d at 953; *Hipp*, 252 F.3d at 1217. Here, Plaintiffs have put forward declarations showing that they and putative collective members are similarly situated in at least the following ways:

- FIMs regularly travelled to various jobsites across the country to manually install SmartRent's hardware;[48]

- FIMs spent the majority of their time doing those manual installations and reviewing/performing

---

[46] *Id.* at 12.

[47] ECF 59, at 16–23.

Although SmartRent also asserts that Osei-Asibey is not similarly situated because she is pursuing discrimination claims against it, *id.* at 22–23 & n.5, it does not explain how that puts her interests in material conflict with the class.

[48] ECF 46-3 (Osei-Asibey), ¶¶ 5–6; ECF 46-4 (Robinson), ¶¶ 5–6; ECF 46-5 (Yerganian), ¶¶ 5–6; ECF 46-6 (Braden), ¶¶ 5–6; ECF 46-7 (Pathickal), ¶¶ 5–6; ECF 46-8 (Moss), ¶¶ 5–6; ECF 46-9 (Easterwood), ¶¶ 5–6; ECF 46-10 (Hutchins), ¶¶ 5–6.

quality checks and repairing work performed by contractors;[49]

- FIMs were all subject to the same pay provisions and classified as exempt;[50] and

- FIMs did not do management work and did not have discretion in how to perform their job duties; did not have authority to deviate from installation goals set by SmartRent; and did not having hiring, firing, or disciplinary authority.[51]

SmartRent, however, insists that FIMs' primary job was "planning and overseeing . . . multifamily smart home installation projects."[52] The declarations supporting Plaintiffs' motion indicate that FIMs were not involved in such managerial-type decisions. This factual dispute about the work actually performed by FIMs is not appropriately resolved at this stage of the litigation.

---

[49] ECF 46-3 (Osei-Asibey), ¶¶ 6–7; ECF 46-4 (Robinson), ¶¶ 6–7; ECF 46-5 (Yerganian), ¶¶ 6–7; ECF 46-6 (Braden), ¶¶ 6–7; ECF 46-7 (Pathickal), ¶¶ 6–7; ECF 46-8 (Moss), ¶¶ 6–7; ECF 46-9 (Easterwood), ¶¶ 6–7; ECF 46-10 (Hutchins), ¶¶ 6–7.

[50] ECF 46-3 (Osei-Asibey), ¶¶ 13–14; ECF 46-4 (Robinson), ¶¶ 13–14; ECF 46-5 (Yerganian), ¶¶ 13–14; ECF 46-6 (Braden), ¶¶ 13–14; ECF 46-7 (Pathickal), ¶¶ 13–14; ECF 46-8 (Moss), ¶¶ 13–14; ECF 46-9 (Easterwood), ¶¶ 13–14; ECF 46-10 (Hutchins), ¶¶ 13–14.

[51] ECF 46-3 (Osei-Asibey), ¶¶ 6–7, 9–10; ECF 46-4 (Robinson), ¶¶ 6–7, 9–10; ECF 46-5 (Yerganian), ¶¶ 6–7, 9–10; ECF 46-6 (Braden), ¶¶ 6–7, 9–10; ECF 46-7 (Pathickal), ¶¶ 6–7, 9–10; ECF 46-8 (Moss), ¶¶ ¶¶ 6–7, 9–10; ECF 46-9 (Easterwood), ¶¶ 6–7, 9–10; ECF 46-10 (Hutchins), ¶¶ 6–7, 9–10.

[52] ECF 59-2, ¶ 7. *See also id.* ¶¶ 7–12.

Rather, it is sufficient that the declarations on which Plaintiffs rely successfully contest SmartRent's attestations to the contrary. *Grayson*, 79 F.3d at 1097.

SmartRent criticizes the "nearly identical cookie-cutter declarations" supplied by opt-ins.[53] Be that as it may, the declarants do describe their responsibilities as FIMs in much the same way as Plaintiffs. SmartRent attempts to distinguish the opt-ins from Osei-Asibey by focusing on Osei-Asibey's deposition testimony that she regularly conducted quality control checks of contractors' work in addition to doing installations.[54] But not only is that facet of her work evident from her declaration,[55] it is also clear in every other supporting declaration—by Robinson and by the opt-ins.[56] SmartRent itself described all FIM positions using the same language,[57] and classified them all as being subject to the FLSA administrative exemption.[58] Regardless, any slight differences in each declarant's description of their job duties does not negate a finding that Plaintiffs and the members of the putative collective are similarly situated. Plaintiffs have more than

---

[53]  ECF 59, at 3.

[54]  *Id.* at 1.

[55]  ECF 46-3, ¶ 7.

[56]  ECF 46-4 (Robinson), ¶ 7; ECF 46-5 (Yerganian), ¶ 7; ECF 46-6 (Braden), ¶ 7; ECF 46-7 (Pathickal), ¶ 7; ECF 46-8 (Moss), ¶ 7; ECF 46-9 (Easterwood), ¶ 7; ECF 46-10 (Hutchins), ¶ 7.

[57]  ECF 59-5, at 74–75.

[58]  *See infra* Section IV.B.2.

satisfied the flexible standard employed at this stage. *Grayson*, 79 F.3d at 1097;
*Morgan*, 551 F.3d at 1261 n.39.

### 2.    Administrative exemption

SmartRent argues that to conditionally certify the proposed collective, the
Court must conclude that Plaintiffs and the putative opt-ins were all subject to a
common unlawful policy.[59] That is not an accurate statement of the law in this
Circuit. In fact, the Eleventh Circuit has expressly held that "a unified policy, plan,
or scheme . . . *may not be* required to satisfy" the similarly situated standard.
*Grayson*, 79 F.3d at 1095 (emphasis added). In any event, Plaintiffs contend that
SmartRent purposefully improperly classified FIMs as subject to the FLSA's
administrative exemption. Despite SmartRent's insistence that the exemption is
"clearly" applicable, that is in fact one of the central issues in dispute.

Under § 213 of the FLSA, individuals "employed in a bona fide executive,
administrative, or professional capacity" are exempt from the overtime
compensation requirements. 29 U.S. § 213 (a)(1). "[E]mployee employed in a bona
fide administrative capacity" means the employee, among other things, has a
primary duty that is "the performance of office or non-manual work directly
related to the management or general business operations of the employer or the

---

[59]   ECF 59, at 17.

employer's customers" and that primary duty "includes the exercise of discretion and independent judgment" on matters of significance. 29 C.F.R. § 541.200(a).

Here, there is a material dispute about whether SmartRent properly classified FIMs as exempt given Plaintiffs' assertion that their *actual* primary duty was manual installations—despite SmartRent's *description* of the role as involving management decisions. Plaintiffs are not attempting to certify a collective of workers who all had different job titles, responsibilities, and pay simply based on their classification as exempt. *Compare Shaw*, 2009 WL 10665138, at *8 (noting that cases declining to certify collectives based only on the decision to reclassify the employees as exempt "require practical job duty similarity" because the reclassification decision itself does not make the employees similarly situated). Plaintiffs seek to certify a collective of people who all held the same basic positions, were paid and classified the same way, and purportedly performed the same type of manual work as their primary duty. It is appropriate to conditionally certify the proposed collective under these facts. SmartRent's administrative exemption arguments are better suited for resolution at the decertification stage.

## V.   Proposed Notice

It is the Court's duty to ensure that the notice sent to members of the putative collective is "timely, accurate, and informative." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. at 172. Plaintiffs assert that the Court should approve their

proposed notice; allow it to be sent by U.S. mail, email, and text; allow opt-ins to execute their consent forms electronically; and authorize a reminder notice.[60] They also want the Court to order SmartRent to produce certain contact information for the putative collective.[61] Because SmartRent has not had any input into the proposed notice to this point, the Court will first direct the parties to meet and confer to try to resolve these issues in advance of a conference with the Court.

## VI.    Conclusion

Plaintiffs' Motion for Conditional Certification and Court-Facilitated Notice [ECF 46] is **GRANTED in part** and **DENIED in part**. The collective defined below

> [a]ll persons who were or are employed by SmartRent as Field Installation Managers or Senior Field Installation Managers at any time in the last three years and who were classified as exempt employees and were not paid the overtime premium of one-and-a-half times their hourly rates for all hours worked in excess of 40 hours per workweek

is **conditionally certified** for purposes of providing notice of this litigation.

Plaintiffs' requests related to their proposed notice are **DENIED without prejudice**. Within 14 days of this Order, counsel for the parties are **DIRECTED** to meet and confer concerning the content and delivery methods of the proposed notice; electronic execution of the forms; whether a reminder notice should be sent;

---

[60]   ECF 46, at 18–22.

[61]   *Id.* at 23–24.

and the contact information that SmartRent should produce for members of the putative collective. The Court will separately notice a conference with counsel to resolve any issues on which the parties are unable to reach agreement.

Within 14 days of this Order, the parties are **DIRECTED** to file a proposed scheduling order setting forth proposed deadlines for the completion of discovery, filing of dispositive motions, and filing of a decertification motion.

**SO ORDERED** this 31st day of March, 2024.

Steven D. Grimberg
United States District Judge